933 A.2d 196 (2007)
2007 VT 72
John DOE
v.
The NEWBURY BIBLE CHURCH, The Newbury Christian School, The Newbury Bible Church and School and Joseph Rinaldi.
No. 06-186.
Supreme Court of Vermont.
July 20, 2007.
*197 Eric R. Gardner, Keene, NH, for Plaintiff-Appellant.
Gregory M. Eaton of Aten Clayton & Eaton, PLLC, Littleton, NH, for Defendants-Appellees.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
¶ 1. SKOGLUND, J.
In this federal diversity action, plaintiff John Doe seeks to hold the Newbury Bible Church vicariously liable for criminal and tortious conduct committed by its pastor. We have accepted the following certified question from the United States Court of Appeals for the Second Circuit pursuant to Vermont Rule of Appellate Procedure 14:
Under Vermont law, as expressed in Doe v. Forrest, 2004 VT 37, [176 Vt. 476,] 853 A.2d 48, is a church subject to vicarious liability for the tortious acts of its pastor under the Restatement (Second) of Agency § 219(2)(d) if the pastor was allegedly `aided in accomplishing the tort by the existence of the agency relation' with the church?
We answer the certified question in the negative.
¶ 2. The material facts are undisputed. Joseph Rinaldi was the pastor of the Newbury Bible Church from the early 1970s until December 2001. The Newbury Christian School is a ministry of the Newbury Bible Church; it is not a separate entity. The church is a private nonprofit corporation. Doe attended the school from third grade until the beginning of ninth grade. Doe's father and stepmother attended the church and were friends with Rinaldi and his wife. The Rinaldis sometimes babysat Doe and his sister, and they drove Doe home from school or soccer practice.
¶ 3. On at least four occasions, Rinaldi fondled Doe inappropriately. The first instance happened in Rinaldi's office at the church. The second instance took place in Rinaldi's car as he drove Doe home from soccer practice. The third and fourth instances occurred at the parsonage, a house owned by the church, where Rinaldi and his family lived. Doe did not tell any adults at the church or the school, and there was no evidence that Rinaldi had a prior criminal record or a background of sexual abuse of children.
¶ 4. After moving away from the area, Doe disclosed Rinaldi's conduct to a counselor who notified the Vermont State Police. Upon learning of the allegations against Rinaldi, the church barred Rinaldi from the grounds of the school and the church, and eventually it revoked his ordination. Rinaldi pleaded guilty to three counts of lewd and lascivious conduct with a minor.
¶ 5. Plaintiff brought suit in the United States District Court for the District of Vermont against Rinaldi, the church, and the school. Rinaldi did not appear. Plaintiff alleged both direct and vicarious liability on the part of the church and school, pursuing theories of respondeat superior, breach of fiduciary duty, negligent supervision, negligent hiring and retention, and seeking punitive damages. The church and the school moved for summary judgment on all claims, and following the magistrate's report and recommendations, the district court granted the motion. The court reasoned that Doe v. Forrest had applied the Restatement (Second) of Agency *198 § 219(2)(d) only to certain instances of police misconduct, and therefore, the church could not be held vicariously liable under that section. Plaintiff appealed to the United States Court of Appeals for the Second Circuit, arguing, in relevant part, that the district court erred in construing Forrest so narrowly. The circuit court found no merit to plaintiff's direct liability claims and certified the vicarious liability question to this Court.
¶ 6. The certified question focuses on one narrow exception to the general rules regarding vicarious liability. In general, an employer may be held vicariously liable for the torts of an employee only when the tortious acts are "committed during, or incidental to, the scope of employment." Brueckner v. Norwich Univ., 169 Vt. 118, 122-23, 730 A.2d 1086, 1090-91 (1999). For conduct to fall within the scope of employment, it must be "the same general nature as, or incidental to, the authorized conduct." Id. at 123, 730 A.2d at 1091; see also Restatement (Second) of Agency § 229(1) (1958). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228(2). Under the Restatement, a master is not subject to liability for the torts of a servant acting outside the scope of employment unless "the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." Id. § 219(2)(d).
¶ 7. This Court, in Doe v. Forrest, expressly adopted § 219(2)(d) "as applicable in assessing whether an employer has vicarious liability for the tortious conduct of an employee when that conduct falls outside the scope of his or her employment" 2004 VT 37, ¶ 22, 176 Vt. 476, 853 A.2d 48. We applied the relevant portion of § 219(2)(d) and reversed a grant of summary judgment in the defendant's favor. We held that § 219(2)(d) allowed claims of vicarious liability against a county sheriff's department for sexual misconduct by a police officer, where the plaintiff argued that the officer was aided by the agency relationship in committing the tort. Id. ¶ 25. We determined that the United States Supreme Court's application of § 219(2)(d) in the Title VII context militated in favor of its application in the context of nonworkplace sexual assault. Id. ¶¶ 28-29 (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). However, in applying § 219(2)(d) in Forrest, we sought to "narrow any rule" created and noted that "[w]hat makes the circumstances of this case virtually unique from a policy perspective is the extraordinary power that a law enforcement officer has over a citizen." 2004 VT 37, ¶ 34, 176 Vt. 476, 853 A.2d 48. We expressly declined to limit the holding in Forrest to law enforcement officers but acknowledged "that principled distinctions can be drawn between law enforcement officers and others in positions of authority." Id. ¶ 47 n. 6.
¶ 8. Today, we must decide whether § 219(2)(d) applies to a situation involving tortious acts by a pastor, and we conclude that under Vermont law it does not. In examining decisions from other courts in which police departments had been held liable for the torts of their officers, the Court in Forrest noted that those decisions relied on the extraordinary power over, as well as the unique access to citizenry provided by virtue of the officer's position and the fact that the citizens are particularly *199 vulnerable and defenseless when an officer is the tortfeasor. Id. ¶¶ 34-39; see also Mary M. v. City of Los Angeles, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, 1349-52 (1991): Applewhite v. City of Baton Rouge, 380 So.2d 119, 121 (La.Ct.App. 1979). In Forrest, we stressed that, "because the community derives substantial benefits from the lawful exercise of police power," the community should bear the costs of police misconduct. Forrest, 2004 VT 37, ¶ 39, 176 Vt. 476, 853 A.2d 48. These policy considerations loom large when a law enforcement officer commits an intentional sexual tort because the victim is someone that the officer has sworn to protect as part of his or her community-policing function.
¶ 9. The circumstances of the tort in this case distinguish it from Forrest in several crucial ways. First, a pastor is not a public actor, and therefore, the policy reasons for extending the cost of police misconduct to the general public are not present. As a society, we give police officers power beyond that of all other citizens so that they may better protect us. Id. ¶¶ 34-35, 37. A pastor, by contrast, is vested with no more power than any other person who takes a leadership role in an organization. Although a pastor's leadership serves the needs of his church, holding the church responsible for his abuse of that power does nothing to deter future abuses: in this case the church removed Rinaldi from his position before the lawsuit against it was filed. Vicarious liability merely penalizes innocent church members for conduct in which they took no part, of which they had no knowledge, and from which they gained no benefit.
¶ 10. Second, although a pastor's position within the church gives him some authority or power over parishioners, especially children who attend a church school, that power is simply not the same as police power. A pastor's influence over a child is little different from the authority exerted by other adult figures in a child's life. See John R. v. Oakland Unified Sch. Dist., 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948, 956-957 (1989) (teacher's influence over a student does not compare to that of law enforcement); Jeffrey Scott E. v. Cent. Baptist Church, 197 Cal.App.3d 718, 243 Cal.Rptr. 128, 131 (1988) (declining to extend § 219(2)(d) to church for misconduct of Sunday school teacher).
¶ 11. Finally, in Forrest we relied upon the unique access, as well as the special power, that police officers have over citizens. 2004 VT 37, ¶¶ 34-39, 176 Vt. 476, 853 A.2d 48. Importantly, when a pastor or other person in a position of authority commits a criminal and tortious act, the victim can turn to the police for help, but when a law enforcement officer is the perpetrator, the victim is uniquely isolated from the protections of the rule of law.
¶ 12. In Forrest, we refused to make broad pronouncements about future cases. Instead, we limited our application of § 219(2)(d) to the facts before us at that time. Id. ¶ 47 (declining to "venture beyond what is necessary to decide the case," Ellerth, 524 U.S. at 763, 118 S.Ct. 2257, and citing John R., 769 P.2d at 957-58 as an example of how other courts handled other situations). Today, we once again limit our holding to the facts before us. We continue to rely on California's guidance in this area because it is one of the few states that has developed a body of case law applying § 219(2)(d).[*] In John *200 R., the California Supreme Court declined to hold a school district vicariously liable for a teacher's molestation of a student while participating in a school-sponsored extracurricular program. In its decision, the court noted the significant distinction between law enforcement officers and teachers:
It suffices here to note that the authority of a police officer over a motorist  bolstered most immediately by his uniform, badge and firearm, and only slightly less so by the prospect of criminal sanctions for disobedience  plainly surpasses that of a teacher over a student. The teacher's authority is different in both degree and kind, and it is simply not great enough to persuade us that vicarious liability should attach here for the teacher's tort. Furthermore, invoking respondeat superior here would raise an entirely different specter of untoward consequences, or interference with the purposes for which the authority was conferred in the first place, than might result from the imposition of vicarious liability in the limited context of a police officer's abuse of authority. We doubt that police departments would deprive their officers of weapons or preclude them from enforcing the laws, but we see a significant and unacceptable risk that school districts would be dissuaded from permitting teachers to interact with their students on any but the most formal and supervised basis.
John R., 769 P.2d at 956-57. The court emphasized that school districts would still be liable for their own negligence in hiring or supervising a teacher who molests students. Id. at 956.
¶ 13. Principled distinctions can be drawn between law enforcement officers and others in positions of authority. Holding a small church and school vicariously liable for the acts of its pastor  without any regard to fault  would in no way further the policy considerations set forth in Forrest or the Title VII cases relied upon therein.
For these reasons, we answer the certified question in the negative.
NOTES
[*] Other courts dealing with clergy sexual abuse have not relied on § 219(2)(d), so those cases have little relevance here. Most courts simply decline to impose vicarious liability using the traditional "scope of employment" analysis of Restatement (Second) of Agency § 228. See, e.g., C.B. ex rel. L.B. v. Evangelical Lutheran Church in Am., 726 N.W.2d 127, 135 (Minn.Ct.App.2007).