NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-2484

———————————

ELISABETH YUCIS,
                                                    Appellant

v.

SEARS OUTLET STORES, LLC; JOHN DOES 1-5 AND 6-10

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-18-cv-15842)
District Judge: Honorable Robert B. Kugler

———————————

Argued March 10, 2020

Before: MCKEE, AMBRO, and PHIPPS, Circuit Judges

(Opinion filed: June 1, 2020)

Deborah L. Mains (Argued)
Costello & Mains
18000 Horizon Way, Suite 800
Mount Laurel, NJ  08054

        Counsel for Appellant

Concepcion A. Montoya (Argued)
Hinshaw & Culbertson
800 Third Avenue, 13th Floor
New York, NY  10022

        Counsel for Appellee

OPINION*

AMBRO, Circuit Judge,

Appellant Elisabeth Yucis sued Appellee Sears Outlet Stores, LLC ("Sears

Outlet") under New Jersey's Law Against Discrimination ("LAD"), N.J. Stat. Ann.

§ 10:5-1 *et seq.* She alleges she visited a Sears Outlet store and was sexually harassed by

a sales manager who is not a party to this case. The District Court dismissed the action

for failure to state a claim, concluding that Yucis had not alleged facts that would support

Sears Outlet's vicarious liability for the harassment. We agree her claims for monetary

relief fail for that reason. And she lacks standing to seek equitable relief. Hence we

modify the order of dismissal to one for lack of jurisdiction as to equitable relief, and

affirm the order as modified.

## I.    Background[1]

On April 28, 2018, Yucis visited a Sears Outlet store in Collingswood, New

Jersey. She spoke with a "Sales Manager," Len Jaffe, who asked, "What is a pretty girl

like you doing in a place like this?" App. 12. Yucis said she was looking for a

refrigerator and showed Jaffe a picture of her kitchen from her phone so he could see the

kitchen's dimensions. Jaffe asked, "Are there photos on there that [I']m not supposed to

see?" *Id.* at 13. After Yucis "responded, 'No,' in a business[-]like fashion," Jaffe said "I

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] The following facts are taken from Yucis' Complaint.

2

am married and so are you, I am just having fun." *Id*. Yucis told Jaffe his comments were inappropriate, but he "continued to make allusions that were inappropriate and extremely degrading." *Id.* Yucis said she was no longer interested in a purchase, so Jaffe gave her his business card and said, "Text me later if you feel lonely." *Id.* Yucis alleges she "attempted to redress the situation with Sears Corporate but received no satisfaction whatsoever, nor any response of accountability." *Id.*

Yucis then brought this action against Sears Outlet (but not Jaffe) under the LAD. After removing the case from state court to federal court,[2] Sears Outlet moved to dismiss, arguing that Yucis had not pled facts that would support its vicarious liability for Jaffe's

---

[2] In removing, Sears Outlet invoked diversity jurisdiction, which requires both diversity of citizenship and an amount in controversy exceeding $75,000, "exclusive of interest and costs." 28 U.S.C. § 1332(a). Yucis did not (and does not) challenge the amount in controversy, but courts have a "continuing obligation" to do so on their own, as it affects subject-matter jurisdiction. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Though not without doubt, we are satisfied the amount-in-controversy requirement is met. Where, as here, the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only "plausibl[y] alleg[e]" the amount in controversy. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Yucis alleges she experienced "pain, suffering, embarrassment, and humiliation" as a result of harassment. App. 14. In removing, Sears Outlet cited these allegations, asserting that the "value of [Yucis'] various claims are clearly not limited to under $75,000." Notice of Removal, Dist. Ct. Dkt. No. 1, ¶ 8. Yucis also seeks attorneys' fees, *see* App. 16–17, which we may consider as part of the amount in controversy, as they are available to prevailing plaintiffs under the LAD, *see Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); N.J. Stat. Ann. § 10:5-27.1. In light of Yucis' allegations and request for attorneys' fees, we think it plausible that the value of Yucis' claims exceeds $75,000.

3

harassment. The District Court agreed, reasoning that Yucis had not alleged that Sears

Outlet was aware of any previous harassment.[3] Yucis appeals.

## II.    Discussion[4]

The LAD prohibits sex discrimination, both by employers against their employees,

*see* N.J. Stat. Ann. § 10:5-12(a), and by places of public accommodation against their

patrons, *see id.* § 10:5-12(f)(1). Yucis invokes the latter provision, which prohibits any

"owner . . . or employee of any place of public accommodation" from "refus[ing] . . . any

of the accommodations" or "discriminat[ing] . . . in the furnishing thereof" based on sex.

*Id.*

Yucis' appeal requires us to consider the circumstances in which an employer may

be vicariously liable for sexual harassment committed by one of its employees in

violation of this provision.[5] Because the New Jersey Supreme Court "has not addressed

---

[3] The Court alternatively concluded that Yucis' claims fail because she did not allege she was precluded from purchasing a refrigerator. Because we affirm the Court's dismissal for lack of vicarious liability, we need not reach this issue.

[4] We review *de novo* the District Court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). Dismissal under Rule 12(b)(6) is appropriate where, accepting all the complaint's well-pleaded factual allegations as true, the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, a complaint's factual allegations must show "more than the possibility of relief to survive a motion to dismiss"—they must show that the "claim is facially plausible." *Fowler*, 578 F.3d at 210.

[5] Yucis' complaint alleges no means of discrimination other than sexual harassment. We do not in this particular case consider the extent to which an employer may be vicariously liable for other means of discrimination, such as a refusal to provide accommodations.

4

this precise question, . . . we must predict how it would decide the issue . . . ." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993).

In cases involving employment discrimination under the LAD, the New Jersey Supreme Court has held that an employer is not, in all respects, strictly liable for the harassment committed by its employees. *See Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 459–66 (N.J. 1993). Rather, liability vicariously attributed to the employer depends on the relief sought. *See id.* For equitable relief—such as reinstatement, back pay, and disciplining the harasser—the employer is strictly liable, as it is "the party with the power and responsibility" to afford such relief. *Id.* at 460. But for compensatory damages,[6] the analysis is "governed by agency principles." *Id.* at 461. These principles are set out in Section 219 of the Restatement (Second) of Agency (hereafter the "Restatement"), and provide for vicarious liability where, for example, the employee was "acting in the scope [his] employment." *Id.* (quoting Restatement § 219(1)).

Yucis argues that these principles do not apply in the context of public accommodations, and that employers are strictly liable for an employee's harassment of patrons. In support, she cites *Turner v. Wong*, 832 A.2d 340 (N.J. Super. Ct. App. Div. 2003), and *Franek v. Tomahawk Lake Resort*, 754 A.2d 1237 (N.J. Super. Ct. App. Div. 2000). But these cases do not discuss vicarious liability, which is unsurprising given that

---

[6] Punitive damages additionally require a plaintiff to demonstrate "actual participation by upper management or willful indifference." *Lehmann*, 626 A.2d at 464. While the Complaint alleges that "Jaffe is a member of [Sears Outlet's] 'upper management' as that term is utilized by the New Jersey LAD," App. 12, we agree with the District Court that this allegation is conclusory and thus not entitled to the presumption of truth on a motion to dismiss.

5

the harassment was committed by the establishment's owner.[7] *See Turner*, 832 A.2d at 345; *Franek*, 754 A.2d at 1240.

For its part, the District Court relied—as Sears Outlet does here—on an unpublished decision of the New Jersey Superior Court, Appellate Division, distinguishing *Turner* and *Franek* on this basis, and "declin[ing] to read [the public-accommodations provision] as imposing strict or vicarious liability on an employer for a single incident of unauthorized conduct by its employee . . . where there is no actual or constructive notice that the employee has exhibited discriminatory conduct in the past." *N.W. v. Greater Egg Harbor Reg'l High Sch. Dist.*, No. A-5079-16T4, 2018 WL 6332247, at *4 (N.J. Super. Ct. App. Div. Dec. 5, 2018).

While not cited by either party or the District Court, another unpublished Appellate Division opinion supports *N.W.*'s conclusion. *See Davis v. Torres*, No. L-5972-08, 2012 WL 1033287, at *5 (N.J. Super. Ct. App. Div. Mar. 29, 2012). There a patron of a pharmacy brought an action against the pharmacy under the public-accommodations provision of the LAD, alleging that, on a single occasion, a pharmacy employee addressed the patron with a racial epithet. *Id.* at *1. The Appellate Division affirmed a summary judgment for the pharmacy, applying vicarious liability principles and concluding that "[n]othing in the record suggests that the [harassing employee] had

---

[7] Yucis also cites without explanation *Thomas v. County of Camden*, 902 A.2d 327 (N.J. Super. Ct. App. Div. 2006). However, *Thomas* does not address vicarious liability under the public-accommodations provision of the LAD, but rather whether a certain entity was a place of public accommodations and whether that entity had an employment relationship with the plaintiff. *See id.* at 331–34, 337–38.

previously uttered a discriminatory comment, or that an intent by him to discriminate was known to [the pharmacy]." *Id.* at \*5.

While *N.W.* and *Davis* are both unpublished opinions, an analogous decision of the New Jersey Supreme Court indicates that it would likely agree with those decisions. *See Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1047–48 (N.J. 2008). Two students sued their seminary, alleging they had been sexually harassed by a man who often attended the seminary's events. *Id.* at 1037. The New Jersey Supreme Court applied the "severe-or-pervasive" standard for hostile-work-environment claims in the employment-discrimination context even though that case was brought under the public-accommodations provision of the LAD. *Id.* at 1045. And the Court further noted that the "means employed by an institution to deter harassment . . . may be considered when assessing that institution's vicarious liability for the actions of an individual over whom the institution exercises control." *Id.* at 1047–48. This statement from the New Jersey Supreme Court, and the (albeit unpublished) decisions of the Appellate Division in *N.W* and *Davis*, persuade us that the New Jersey Supreme Court, if confronted with the issue, would apply the agency principles discussed in *Lehmann*—those set out in Restatement § 219—in public-accommodations harassment cases under the LAD.

Yucis next argues that, even if these vicarious liability principles apply, her Complaint includes sufficient allegations to satisfy them for purposes of monetary relief. And she maintains that because she seeks equitable relief, for which Sears Outlet is strictly liable, remand to the District Court is required. We disagree on both counts.

7

As to monetary relief, under Restatement § 219, a plaintiff may establish vicarious liability by satisfying any of five tests: (1) the employee was "acting in the scope of [his] employment;" (2) the employer "intended the conduct or the consequences;" (3) the employer "was negligent or reckless;" (4) the employee's "conduct violated a non-delegable duty of the [employer];" or (5) the employee "purported to act or to speak on behalf of the [employer] and there was reliance upon apparent authority, or he was aided in accomplishing the [illegal act] by the existence of the [employment] relation." Restatement § 219(1), (2)(a)–(d). Yucis' allegations satisfy none of these tests.

Yucis suggests otherwise for the first test, as Jaffe's conduct was within "the scope of [his] employment." Restatement § 219(1). But for an employee's conduct to be within the scope of his employment, it must have been "actuated, at least in part, by a purpose to serve the [employer]." Restatement § 228(1)(c). And nothing alleged in the Complaint suggests that Jaffe was moved to act by anything other than his own "personal motives, . . . unrelated and even antithetical to" Sears Outlet's objective of selling products. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998) (concluding that "[t]he general rule is that sexual harassment . . . is not conduct within the scope of employment"); *see also Lehmann*, 626 A.2d at 462 (noting that "the more common situation" is where the harassment is "outside the scope of . . . employment"). Indeed, Yucis' allegation that Jaffe said he was "just having fun" suggests his motivations were personal. App. 13.

Nor does the Complaint allege facts that would satisfy the second or third tests by supporting an inference that Sears Outlet "intended" the harassment or was "negligent or

8

reckless" in failing to prevent it. Restatement § 219(2)(a)–(b). Yucis does not allege that Jaffe or any other store employee had previously harassed a patron, that Sears Outlet lacked an anti-harassment policy, or any other fact that would make plausible it knew or should have known its patrons were likely to be harassed and failed to take reasonable steps to prevent it.[8]

Yucis also contends that she satisfies the fourth test, as the "LAD places a non-delegable duty upon places of public accommodation to comply with the statute and not to discriminate." Yucis Br. 16 (referring to Restatement § 219(2)(c)). But she cites no authority for the proposition that the LAD imposes any non-delegable duty, and the New Jersey Supreme Court has held that *Lehmann* rejected that proposition. *See Davis v. Devereux Found.*, 37 A.3d 469, 482 & n.4 (N.J. 2012) ("In . . . *Lehmann* . . . , the Court declined to substitute a 'non-delegable duty' for traditional tort principles.").

Finally, Yucis maintains that she satisfies the fifth test, arguing that Jaffe was "aided in his discrimination and harassment by the . . . agency relationship" because, "[a]bsent his employment by [Sears Outlet] and his ability, therefore, to interact with customers and engage in transactions with customers on behalf of [Sears Outlet], he would not have had the ability to harass and discriminate." Yucis Br. 16 (referring to Restatement § 219(2)(d)). Again she cites no authority—New Jersey or otherwise—for

---

[8] While Yucis does allege that she "attempted to redress the situation with Sears Corporate" and "received no satisfaction whatsoever, nor any response of accountability," App. 13, that allegation is so general as to be conclusory, and is thus not entitled to the presumption of truth on a motion to dismiss. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (noting that allegations may be "so threadbare . . . that they fail to cross the line between the conclusory and the factual" (quoting *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011))).

9

the proposition that an employee is aided by his employment when harassing a patron merely because he would not have interacted with that patron but for his employment. And courts applying Restatement § 219(2)(d), including the United States Supreme Court, have rejected similarly broad readings of that provision. *See, e.g.*, *Burlington Indus., Inc.*, 524 U.S. at 760 (noting that, "[i]n a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the [employment] relation," as "[p]roximity and regular contact may afford a captive pool of potential victims," but rejecting such a broad reading of Restatement § 219(2)(d)); *Hirschfeld v. N.M. Corr. Dep't*, 916 F.2d 572, 579 (10th Cir. 1990) (rejecting as "too broad a reading of [Restatement §] 219(2)(d)," the argument that an employee was aided by his employment in sexually harassing a coworker because "he would not have been there but for his job").

Rather, for an employee to be aided by his employment in committing a wrongful act, he must have taken advantage of some special mechanism afforded to him by his employment. *See, e.g.*, *Costos v. Coconut Island Corp.*, 137 F.3d 46, 50 (1st Cir. 1998) (holding that a hotel employee was aided by his employment in sexually assaulting a hotel guest, where he had access to the guest's room key); Restatement § 219(2) cmt. e (providing that a "telegraph operator" would be aided by his employment in "send[ing] false messages purporting to come from third persons," presumably because the operator's employment affords him access to the telegraph machine). Or the employment must have provided the employee a position of special authority making the victim particularly vulnerable to the wrongful act. *Compare, e.g.*, *Doe v. Forrest*, 853 A.2d 48,

10

61–62 (Vt. 2004) (holding that a sheriff's deputy was aided by his employment in coercing a civilian into a sexual act because the deputy's position gave him "unique access to a citizen who is depending upon the law enforcement officer for protection"), *with Doe v. Newbury Bible Church*, 933 A.2d 196, 199–200 (Vt. 2007) (declining to extend *Forrest*, and holding that a church's pastor was not aided by his employment in sexually assaulting a child parishioner, and noting that, unlike a law enforcement officer, a pastor "is vested with no more power than any other person who takes a leadership role in an organization").

Yucis does not allege any facts suggesting that Jaffe's harassment was enabled by any mechanism he obtained through his employment or that his position as a sales manager afforded him any special authority over a vulnerable victim. She merely argues that Jaffe would not have had the opportunity to interact with her but for his employment. We cannot conclude that the New Jersey Supreme Court would hold there to be vicarious liability based on that fact alone.

What remains is Yucis' request for equitable relief. Among other things, she seeks an order that Sears Outlet "cease and desist all conduct inconsistent with [her] claims . . . going forward, both as to [her] and as to all other individuals similarly situated." App. 16.[9] As noted above, in the employment-discrimination context, under *Lehmann* an employer is strictly liable for equitable relief—such as back pay and

---

[9] Her Complaint also requests relief clearly inapplicable to her case, such as "reinstatement, with equitable back pay and front pay." App. 16.

11

reinstatement.  *See* 626 A.2d at 460.  Yucis has cited no case applying this principle in the public-accommodations context.

But even assuming that an employer may be strictly liable to a patron for equitable relief, such as an order requiring the employer to discipline the harasser or otherwise prevent further harassment, Yucis' Complaint lacks allegations establishing her standing to seek injunctive or other equitable relief.[10]  *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (providing that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects").  Yucis does not, for example, allege any intent or desire to return to Sears Outlet but for the discrimination she would experience there. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (holding that plaintiffs lacked standing to seek injunctive relief where they lacked actual plans to revisit the site of the allegedly illegal conduct).  And while Yucis also seeks injunctive relief on behalf of other similarly situated individuals, because she is the sole named plaintiff she may not do unless she herself has standing.  *See McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (holding that, in a class action, "at least one named plaintiff" must have standing).  Because Yucis lacks standing to seek equitable relief, we will modify the District Court's order of dismissal to reflect that the request for that relief is dismissed for lack of jurisdiction.  *See* 28 U.S.C. § 2106 (providing that any "court of appellate jurisdiction may . . . modify . . . any judgment . . . of a court lawfully brought before it for

---

[10] While neither Sears Outlet nor the District Court challenged Yucis' standing, we may, as noted above, consider it *sua sponte*, as it affects subject-matter jurisdiction.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d Cir. 2014).

review"); *In re Packer Ave. Assocs.*, 884 F.2d 745, 748–49 & n.2 (3d Cir. 1989) (holding we may, under 28 U.S.C. § 2106, modify a district court's order without a remand).

\* \* \* \* \*

In sum, we conclude that the New Jersey Supreme Court would apply the vicarious liability principles from its employment-discrimination cases under the LAD to a case involving harassment in a place of public accommodations under the same statute. Applying those principles, Yucis' Complaint lacks allegations giving her a plausible claim for vicarious liability as to monetary damages. And her Complaint lacks allegations supporting her standing to seek equitable relief. Accordingly, we modify the District Court's order of dismissal to reflect that the request for equitable relief is dismissed for lack of jurisdiction and affirm the order as modified.

McKEE, J., dissenting.

While I agree that the New Jersey Supreme Court would adopt agency principles to evaluate Elisabeth Yucis' allegation of gender discrimination under the New Jersey Law Against Discrimination, I would reverse the District Court's dismissal of her complaint based on those principles. *Jaworowski v. Ciasulli*, 490 F.3d 331, 335 (3d Cir. 2007) ("[W]hen sitting in diversity our role is to predict how a state's highest court would rule if a particular issue came before it"); *see also Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445, 461 (N.J. 1993) ("[W]e hold that employer liability for supervisory hostile work environment sexual harassment shall be governed by agency principles."). I think a jury could readily conclude that Len Jaffe was acting within the scope of his employment when he sexually harassed Yucis during a conversation about purchasing a refrigerator. *See* N.J. Stat. Ann. § 10:5-12(f)(1) (prohibiting public-accommodation discrimination); *Lehmann*, 626 A.2d at 461-62 (providing for vicarious liability under the LAD where an employee is acting within the scope of his or her employment). Although Jaffe was ultimately unsuccessful, a factfinder could conclude that his crude sexual remarks were part of a sales strategy to flirt with or flatter Yucis in order to make a sale. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (discussing the standard for stating a plausible claim at the motion to dismiss stage). Yucis alleges, for example, that Jaffe viewed photos of her kitchen to help her select a refrigerator. Selling refrigerators is part of Jaffe's job as a salesperson and it clearly benefits Sears. *See* Restatement (Second) of Agency § 228(1) (explaining that conduct of the kind a person is employed to perform

1

and "actuated, at least in part, by a purpose to serve the [employer]" is within the scope of employment).

Moreover, *Franek v. Tomahawk Lake Resort*, 754 A.2d 1237 (N.J. Super. Ct. App. Div. 2000), which is cited by Judge Phipps, is not to the contrary. The LAD is not limited to conduct "designed to discourage a potential patron's use of a public accommodation." The LAD "is not a fault- or intent-based statute." *Lehmann,* 626 A.2d at 454 ("Although unintentional discrimination is perhaps less morally blameworthy than intentional discrimination, it is not necessarily less harmful in its effects, and it is at the *effects* of discrimination that the LAD is aimed. Therefore, the perpetrator's intent is simply not an element of the cause of action.").

Requiring the offender to subjectively intend to discourage a patron's use of a public accommodation undermines the broad remedial purpose of the LAD. *See Lehmann*, 626 A.2d at 451 (describing the LAD's purpose as "nothing less than the eradication of the cancer of discrimination.") (internal quotation marks and citation omitted); *Smith v. Millville Rescue Squad*, 139 A.3d 1, 11-12 (N.J. 2016) (explaining that the court should liberally construe the LAD in light of its broad policy goals and remedial purpose); *Quinlan v. Curtiss-Wright Corp.*, 8 A.3d 209, 221 (N.J. 2010) (The Supreme Court of New Jersey has "been scrupulous in [its] insistence that the [LAD] be applied to the full extent of its facial coverage.") (internal quotation marks and citation omitted).

An intent requirement would be particularly damaging in situations involving sexual harassment. In these cases, the perpetrators' comments can often be characterized as failed sexual advances rather than overt attempts to discourage a patron's use of a

public accommodation. In fact, harassers may even think that they are complimenting the victim. Sexual harassers could easily dismiss their victims' protestations by claiming the victims are "overly sensitive" or claiming they were "just kidding." Thus, it is simply no defense that Jaffe may have intended to flatter Yucis, score a date, or even sell an appliance. Yucis alleges that Jaffe's persistent, unwelcome sexual remarks embarrassed and humiliated her, and discouraged her from shopping at Sears. *See Turner v. Wong*, 832 A.2d 340, 355 (N.J. Super. Ct. App. Div. 2003) (finding that a woman states a claim for discrimination where "she was embarrassed and humiliated in her effort" to make use of a public accommodation because the LAD reaches "situations where customers are merely discouraged from using a public facility because of verbal comments made to them about their protected status."); *see also Lehmann*, 626 A.2d at 454 (holding that "a plaintiff need not show that the employer intentionally discriminated or harassed her," but instead adopting an objective "reasonable woman" standard to evaluate hostile work environment complaints).

Yucis' complaint plausibly alleges that a Sears employee sexually harassed her while acting within the scope of his employment as a salesperson. I therefore believe that the District Court erred in dismissing Yucis' complaint at this stage of the proceedings.

PHIPPS, J., concurring.

I vote to affirm the dismissal of the complaint because it does not state a claim for public-accommodation discrimination. Elisabeth Yucis alleges that in attempting to purchase a refrigerator at a Sears Outlet store, she was subjected to harassment in the form of unwelcomed, overly flirtatious verbal advances by one employee, Len Jaffe. But that alone does not suffice for a claim for public-accommodation discrimination under New Jersey law. *See* N.J. Stat. Ann. § 10:5-12(f)(1) (prohibiting public-accommodation discrimination). Rather, such a claim also requires plausible allegations that the offending conduct was "designed to discourage a potential patron's use of a public accommodation." *Franek v. Tomahawk Lake Resort*, 754 A.2d 1237, 1242 (N.J. Super. Ct., App. Div. 2000); *see also Turner v. Wong*, 832 A.2d 340, 356 (N.J. Super. Ct., App. Div. 2003) ("[T]he focal issue is whether defendant acted with an actual or apparent design to discourage present or future use of the public accommodation by plaintiff on account of her protected status."). Because the complaint lacks allegations of that kind, the District Court did not err in dismissing it.

Judge McKee views New Jersey public-accommodation law differently. His dissent relies on *Lehmann v. Toys 'R' Us, Inc.*, 626 A.2d 445 (N.J. 1993), to conclude that Yucis states a claim for sexual harassment in public accommodations. But *Lehmann* was a case about sexual harassment in *employment*, and the dissenting opinion identifies no New Jersey precedent that recognizes a claim for sexual harassment in *public accommodations*. Because the role of a federal court in diversity is "to ascertain what the state law is, not what it ought to be," we should not so extend New Jersey's statutorily

1

defined public-accommodation cause of action. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). But even if New Jersey were to permit such a claim, that would require a showing of severe or pervasive harassment. *See Lehmann*, 626 A.2d at 453 ("[I]t is the harassing conduct that must be severe or pervasive, not its effect on the plaintiff . . . ."). And here, the allegations of a single instance of inappropriate comments unaccompanied by touching, physical threats, or humiliation does not constitute severe or pervasive sexual harassment. *See Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1045 (N.J. 2008).

I also believe that the dissenting opinion overreads dictum from *Lehmann* to conclude that, as a general matter, the New Jersey Law Against Discrimination does not require a showing of fault or intent. *See Lehmann*, 626 A.2d at 454. Outside the context of sexual harassment in employment, the New Jersey Supreme Court has subsequently made clear that a discriminatory motive is essential to a disparate treatment employment discrimination claim. *See Gerety v. Atl. City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005) ("Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere facts of differences in treatment." (quoting *Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465, 478 (N.J. 1978))). And as explained above, New Jersey appellate courts recognize a similar discriminatory-motive requirement for public-accommodation discrimination claims. *See Turner*, 832 A.2d at 356; *Franek*, 754 A.2d at 1242. Thus here, without plausible allegations of discriminatory intent, Yucis fails to state a claim for public-accommodation discrimination.